# M. J. WILSON v. CITY OF SCRANTON.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
OF LACKAWANNA COUNTY.

Argued February 25, 1891—Decided April 20, 1891.

[To be reported.]

(*a*) A landowner in Scranton having filed a petition for the assessment of damages arising from the construction by the city of a sewer through his property, three viewers were appointed, in accordance with the provisions of the act of May 24, 1887, P. L. 204, afterwards declared unconstitutional in Ayars' App., 122 Pa. 266.

(*b*) On the trial of an issue, on an appeal by the city from the award of the three viewers, after the jury were sworn and had been sent to view the property at the request of the city its counsel moved to strike off all the proceedings, on the ground that the board of viewers was illegally constituted and without jurisdiction:

1. The objection came too late: the appointment of three viewers under the void act of 1887, instead of seven as required by § 53, act of May 23, 1874, P. L. 267, was an irregularity which did not affect the jurisdiction of the court over the parties and the subject matter under the last mentioned act: the appeal taken had rendered it immaterial.

2. In appropriating land for a sewer, a city is not obliged, nor in strictness is it authorized, to take more than is actually necessary for its purpose; and the extent of the use and control of the land which it shall appropriate therefor is within its own discretion, provided the limits of such necessity are not exceeded.

3. Wherefore, in a proceeding to assess damages for such a taking, the city may show that by a joint resolution of councils, approved by the mayor, it has taken corporate action, limiting the extent of the use actually appropriated, and then show, by experts, the effect upon the value of the property of the taking as thus limited.

Before PAXSON, C. J., GREEN, CLARK, McCOLLUM and MITCHELL, JJ.

No. 109 January Term 1891, Sup. Ct.; court below, No. 4 October Term 1888, C. P.

On June 4, 1888, Milo J. Wilson filed a petition praying for the appointment of viewers to assess damages arising to the petitioner by reason of the construction of a sewer by the city of Scranton through certain property of the petitioner. On

the same day, the court appointed three viewers, in accordance with the provisions of § 1, article XVIII., act of May 24, 1887, P. L. 244, to assess the damages and make report thereof to the court. The viewers having made a report awarding to the petitioner the sum of $400 to be paid by the city of Scranton, the city entered an appeal from the award, whereupon an issue was framed upon a declaration against the city as in an action of trespass quare clausum fregit, to determine the amount of damages to which the plaintiff was entitled.

At the trial, on June 11, 1890, after the jury had been sworn and upon motion of the defendant had been sent to view the premises of the plaintiff, the following motion was filed, on behalf of the defendant:

Counsel for defendant moves to strike off all the proceedings in the case, for the reason that it appears that viewers were appointed and subsequent proceedings taken by virtue of an act of assembly approved May 24, 1887, entitled "An Act dividing cities into seven classes," etc., which act was subsequently declared by the Supreme Court of Pennsylvania to be unconstitutional and invalid. The defendant, therefore, claims that this court, and the viewers appointed by the court, had no jurisdiction whatever to hear and determine the matters in dispute, or to award damages to plaintiff for any amount whatever; and that the appeal from the case is void for want of jurisdiction and authority in the court.

By the court: The motion is refused; exception.

The trial then proceeded and the following facts were shown:

The plaintiff was the owner of five contiguous lots of ground in Scranton, forming one enclosure, and used for carrying on a planing mill and lumber yard. Through the property, a short distance from the plaintiff's mill, ran a stream of water. In 1886 and 1887, the city converted the stream into a sewer by walling up and covering over its channel, after making some slight changes in its course. The sewer as constructed was ten feet wide. After its construction, the city covered the top of the sewer with earth.

Before entering upon the plaintiff's land, the city delivered to him a bond conditioned for the payment of "any award or judgment which he may obtain against the city of Scranton, as damages for the building of the main sewer through his lot."

The bond did not specify the dimensions of the sewer, or the nature and extent of the easement appropriated by the city therefor.

The plaintiff having testified that his property was depreciated by the sewer to the extent of at least $5,000, as it affected the accessibility of the property for the uses to which he subjected it, he was asked upon cross-examination, whether he was actually using the strip of land beneath which the sewer was laid; the question was objected to as immaterial.

By the court: I do not think the fact that he is using this strip of land now, has anything to do with the case; because, if the city has taken it, they have a right to exclude him from it. It is not a question of what he is doing, but of what he has a right to do; how his right is affected by the taking of the land.

" Q. Are you in the actual possession and using this property occupied underneath the surface by the sewer, and are you using it for the ordinary purposes of a lumber yard and whatever you please to do there ? "

Counsel for plaintiff object to the question, as irrelevant and immaterial.

By the court: The objection is sustained; question excluded; exception.[2]

The plaintiff, afterward, in reply to questions upon cross-examination, stated that if the city had no absolute title to the strip of ground occupied by the sewer, and did not use it for any purpose except what it was used for at the time of the trial, and if he had the right to use the surface above the sewer and could not be excluded therefrom by the city, the injury to the property would not exceed one half the sum he had mentioned. Other witnesses for the plaintiff testified that if the city had the right to exclusive possession of that strip of ground, the damages to the property would be much greater than if the plaintiff had the right to use the surface.

E. F. Blewitt, the defendant's city engineer, being called for the defendant, was asked upon direct examination:

" Q. If the city has taken this property for sewer purposes, how much use and occupation of that property is it necessary for the city to assume and carry out for city purposes ? "

Counsel for plaintiff object to the question.

Charge of Court below.

By the court: Objection sustained; question excluded; exception.[4]

The defendant then made the following offer:

Counsel for defendant proposes to offer the following resolution in evidence.

"Joint resolution with regard to sewers through private property.

"Resolved by the select and common councils of the city of Scranton that in all cases in which sewers have been or shall be constructed through private property, the city disclaims all right to interfere with the title, use or occupation of such private property, except for the purpose of necessary repairs, and only for the time and to the extent that such repairs may be required.

"Approved by select council *June* 5, 1890, William Kellow, president pro tem.; approved by common council June 11, 1890, P. W. Gallagher, president pro tem.; approved June 12, 1890, John H. Fellows, mayor."

This is offered for the purpose of defeating a recovery by the plaintiff.

Counsel for plaintiff object to the offer as irrelevant, immaterial, and incompetent, to defeat a recovery, or for any other purpose in connection with this case.

By the court: Objection sustained, offer excluded; exception.[5]

At the close of the testimony, the court, GUNSTER, J., after stating the facts in evidence, charged the jury in part as follows:

Now these facts are all undisputed, and being undisputed, I hold as a matter of law, that there was an actual taking of the plaintiff's land. It could not be otherwise. Unless the city took this land, they had no right to go there; and in constructing the sewer there, under a valid ordinance, the city has a right to take this land for sewer purposes. I say to you, then, as a matter of law, under these undisputed facts, there was an actual taking of the plaintiff's land, and for such taking, under the constitutional provision which was read to you, the city is bound to make compensation, not only for the land taken, but also for the property which may have been injured or destroyed by such taking.

Charge of Court below.

You must look upon this property as a whole; it is all together and used for one purpose, and all the evidence tends to show that it was used for only one purpose, that is, a mill and a lumber yard. You cannot split it up into sections and say a section here is worth so much, and then allow the plaintiff damages for that, but you must consider how the whole property has been affected by this taking. And, in order to determine that, the rule has been laid down to be the difference between the fair market value of the property before any of it was taken, and the fair market value of the property as it was affected by the taking.

Now, how was the fair market value of this property affected by the taking of part thereof? It is perhaps necessary to ascertain and determine, to some extent, what the respective rights of the parties are over this particular strip. And it is also important to ascertain what the actual condition of the property was at the time it was taken, so that you may from that determine how it was affected. So far as the rights of the parties are concerned, I am not able to agree with counsel for the defendant. The right which the city acquires was the right to construct and keep in operation a sewer over and along the strip of land in question, and that includes the right to alter and repair whenever necessary. The sewer is the property of the city, and the city has the right to do whatever is necessary to guard and protect it, and the city has the right to that whenever it finds it necessary to do so.

The title to the land itself is still in the plaintiff, but the city has acquired a right in the nature of an easement over it. The city can use the land, on which the sewer is constructed, for any purpose consistent with sewer purposes and for no other. It was acquired for sewer purposes, and whenever that is abandoned, that is, whenever the sewer is abandoned, and the city gives up that sewer, then the title to the land will revert back again to Mr. Wilson, and you have the right to consider the probability of that sewer ever being abandoned.

Now, while the title, what lawyers call the fee of the land, is in Mr. Wilson, still he has no right to interfere with this strip of land in any way, and he has no right to interfere with the purposes for which it has been taken, and if the city deems it necessary or proper, it has the right to exclude him from it; that

Charge of Court below.

is, they may shut him off from this strip of ten feet altogether. They may wall it up or fence it in, or put anything upon it to prevent Mr. Wilson or anybody else from entering upon it which may be necessary, because, in order that the city may make its repairs, and take proper care of the sewer, it must necessarily have the right to go there whenever it pleases, whenever, in the judgment and discretion of the city, it is found to be necessary to do so. If Mr. Wilson has the right to go there, or to erect buildings upon it, why, you see that right of the city would be interfered with at once, and in case the city found it necessary to make repairs, they would find a house on top of the sewer. Such a state of affairs cannot be adopted, and such a construction of the law is not known to the law of eminent domain in this state.

Now, this is substantially the right of the city upon the part of the land taken. How was the market value of this property affected by this taking? . . . .

. Upon the part of the defendant, I am asked to say to you:

1. The city of Scranton has the right to wall up and cover over the channels of water-courses, and to establish, alter and change such channels.

Answer: I affirm that, with the qualification that whenever the city does so, and in doing so, takes, injures or destroys private property, they must make compensation for it.

2. Such action by the city is not a taking within the meaning of the law of eminent domain.

Answer: I decline to affirm that proposition. It depends upon the peculiar facts of the case, whether or not it is a taking; that is, whether the walling over of a stream would be a taking. It depends entirely upon the facts of the case.

3. The defendant is only entitled to use the portion of plaintiff's property covered by the sewer, for sewer purposes. Aside from this, the plaintiff is entitled to the full use of his entire property, including the portion occupied by the sewer.

Answer: I decline to affirm that. I do not understand that to be the law. Upon the contrary, the city has the right to the exclusive possession of this strip of ten feet, which they have taken for sewer purposes, and they have a right to keep Mr. Wilson off it.[6]

4. The extent of the use required for sewer purposes is a question of fact for the jury.

Arguments.

Answer: I decline to affirm that proposition, gentlemen of the jury. The extent of the use required for sewer purposes is a matter entirely within the discretion and judgment of the city authorities, and the court and jury have nothing whatever to do with it. Whenever the city deems it necessary to change, alter, modify or abandon that sewer, they have the power to do so; and no court and jury will interfere with them for doing so, because the charter gives them the right.[7]

Upon the part of the plaintiff I am asked to charge you:

2. Under the evidence in this case, the possession by the city of the land occupied by the sewer across the premises of the plaintiff is an exclusive right, and the city at any time can fence the same on both sides of the sewer and prevent the plaintiff from having the use of any portion of it.

Answer: I affirm that proposition.[8]

—The jury returned a verdict in favor of the plaintiff for $500. Rules to show cause why judgment should not be arrested and why a new trial should not be granted having been discharged, judgment was entered on the verdict; whereupon the defendant took this appeal, assigning for error:

1. The refusal of defendant's motion.[1]

2. The refusal of defendant's offer.[2]

4, 5. The refusal of defendant's offers.[4] [5]

6, 7. The answers to defendant's points.[6] [7]

8. The answer to plaintiff's point.[8]

*Mr. I. H. Burns,* for the appellant.

1. The appointment of viewers was made under the supposed authority of the municipal act of May 24, 1887, P. L. 204, which provided that in cities of certain classes the court should appoint as viewers three freeholders of the city: § 1, article XVIII. Three such viewers were appointed. But that act was afterwards declared unconstitutional: Ayars' App., 122 Pa. 266; and for the purposes of this case it is the same as though it never existed. The question then is, whether this proceeding can be sustained under the act of May 23, 1874, P. L. 230. That act provides, in § 53, for the appointment of seven freeholders, neither residing nor owning property within the city. In § 55 it provides, also, that five of the viewers must be sworn, and four must unite in making the report.

Arguments.

. 2. Not one of these requirements of the act of 1874 was complied with, and the illegal board of viewers appointed never obtained jurisdiction and had no power to bind anybody. It necessarily follows that the court had no jurisdiction on appeal. There can be no valid appeal from a void proceeding. Want of jurisdiction can be taken advantage of at any stage of the proceeding : Collins v. Collins, 37 Pa. 387 ; Bergman v. Roberts, 61 Pa. 501 ; Deihm v. Snell, 119 Pa. 316 ; Pittsb. N. Bank v. Shoenberger, 111 Pa. 95. It should be borne in mind that this is not a suit at law, and the case is not analogous to that of an appeal from an award of arbitrators. If a board of arbitrators is illegal, the award may be treated as a nullity and the original suit go on, just as if it had not been ruled out. But here there was no original suit, and no issue can be made except on appeal from a report of viewers.

3. The trial judge ruled the case upon a mistaken view of a "taking" under the right of eminent domain. What is actually taken is not the land itself, but only the use of it for the particular purpose for which it is needed. In some cases the use involves almost the entire possession of the land, as where it is taken for a railroad station ; yet even there the owner may tunnel beneath it or stretch wires over it, so long as he does not interfere with the use for which it was taken. The extent of the taking varies with its object, and is limited by the public necessity : Lyon v. Gormley, 53 Pa. 264 ; Sanderson v. Haverstick, 8 Pa. 294. For all purposes outside of such necessity, the owner's dominion continues : Lewis v. Jones, 1 Pa. 336 ; Woodruff v. O'Neal, 28 Conn. 168 ; Stackpole v. Healy, 16 Mass. 33.

4. In the present case, all that the city took was the right to use the channel of a stream for sewer purposes. Aside from this particular use, the plaintiff has full control of his property, and he is actually using the surface over the sewer. In order to estimate the damages, it was necessary for the jury to determine the extent of the use taken and required. In refusing to permit them to do so, the court took from them the decision of a vital question of fact, within their province : Lewis on Em. Dom., § 502 ; Dodson v. Cincinnati, 34 Ohio St. 276. As to use of surface over a conduit, see Taylor v. Baltimore, 45 Md.

576. The court below says that the damage must be measured by the right to use, and not by the actual present use. But the right of the city is limited by the necessity of the use. The answer to the defendant's third point was equivalent to saying that the city may not only use the channel of this stream as a sewer, but may also fence in the surface and use it for a highway or rent it for business purposes.

*Mr. E. N. Willard* (with him *Mr. Everett Warren*), for the appellee:

1. By the express provisions of the act of May 23, 1874, P. L. 230, jurisdiction of the subject matter in controversy in this case is vested in the Court of Common Pleas. The appointment of three viewers, instead of seven, was an irregularity merely, which the defendant has waived by not promptly making objection thereto; and it was too late to object after two years of acquiescence and after participating in the subsequent proceedings: 1 Tidd's Pr., 512, 513; Patten v. Railroad Co., 1 Pears. 48; Littleton's App., 93 Pa. 177; Spring St., 112 Pa. 258; Delaware etc. R. Co. v. Burson, 61 Pa. 373.

2. The question, the exclusion of which is complained of in the second specification, would have been misleading, as it referred merely to the day of trial. Moreover, as the court said, the point is the extent of the city's right, not the extent of its present use. And the alleged resolution of the city councils was not proved, or attempted to be proved, as a resolution, in accordance with the provisions of § 21, act of May 23, 1874, P. L. 245, and § 8, article VI., act of May 23, 1889, P. L. 297, or in any other manner. If it had been proved, it would have been open to the objection of want of authority in councils to legislate on the subject of sewers, except by ordinance: clause 2, § 20, act of May 23, 1874, P. L. 238; § 1, article XIII., act of May 23, 1889, P. L. 312.

3. There was no error in the rulings of the court respecting the extent of the city's rights over the surface of the land. The municipal authorities are themselves the judges, and the only judges, of the extent to which it is necessary to use the strip of land in question; and if in their judgment it is or shall hereafter be necessary wholly or entirely to exclude the

Opinion of the Court.

plaintiff therefrom, neither he nor courts and juries can gainsay their judgment: Finn v. Gas & Water Co., 99 Pa. 640; N. Y. etc. R. Co. v. Skinner, 19 Pa. 298; Junction R. Co. v. Philadelphia, 88 Pa. 427; Brainard v. Clapp, 10 Cush. 6; Curtis v. Railroad Co., 14 Allen 58. The case was correctly tried and submitted to the jury on this theory.

OPINION, MR. JUSTICE MITCHELL:

If the appellant were right in regarding the motion to strike off the proceedings as raising a question of jurisdiction, its contention here would have to be sustained. But there was no defect of jurisdiction in the initiation of the proceeding, which was by a petition filed by the plaintiff asking the assessment of the damages to his property by the city's action in building the sewer. Of this subject the court had general jurisdiction under the act of 1874, and was the proper place for the filing of the petition. The plaintiff, therefore, was in court upon a valid application to its unquestionable powers. The appointment of three viewers, under the void act of 1887, instead of seven, as required by the act of 1874, was an irregularity for which the appointment would undoubtedly have been vacated had the objection been made in time, but it did not affect the jurisdiction of the court over the parties or the subject-matter. The viewers thus appointed having gone on and made their report, the city appealed, an issue was framed, and the jury sworn, and then for the first time the objection was made. It was too late. The parties were properly in court; the appeal had started the proceedings de novo according to the course of the common law, and the previous irregularity had become immaterial. The learned judge was right in overruling the motion.

The other assignments are more serious. A fundamental error runs through the trial, in assuming that the city had taken the ground occupied by the sewer, absolutely, and was therefore liable for its full value. The city might have done so, and perhaps the fair presumption would be that it had; but it was not obliged, nor in strictness was it authorized, to take more than was actually necessary for its purpose. The limit of the public right is the public necessity, and the residue, as

it may be called, of the use of the land, remains unaffected in the owner. The extent of such residue depends on the nature of the public use, and that may vary all the way from the exclusive occupation for a school-house or public building to the easement of running a gas pipe underneath or a telegraph wire overhead. The city was therefore entitled to show the extent of its actual taking. This, however, could only be shown by corporate action. The city would not be bound by the opinions of experts, even of the city engineer, as to the amount of interest in the land that should be taken. That was within its own discretion, provided, of course, it did not exceed the limits of necessity for its purpose. The plaintiff was entitled to have its intention shown by action binding on the corporation, and put on the record in such form as to give him a cause of action in case the city officials should at any future time attempt to do anything in excess of their privileges actually acquired and paid for. This, however, being properly shown, the extent to which the rights so acquired would interfere with the plaintiff's enjoyment and use of his land, and the consequent effect on its value, could be shown by experts as in other cases.

The resolution offered by appellant appears to have been a joint resolution of councils, approved by the mayor. It was objected to as irrelevant, immaterial, and incompetent. The argument of appellee specifies the further objection that it was not proved, identified, or certified as required by the act of 1874. As this matter does not appear on the record, we do not pass upon it, but the resolution, if properly proved, was competent. And, the limits of the city's exercise of the right of taking the property being thus shown, the questions to the plaintiff and others, as to the actual state of things on the land and the effect on its value, should have been admitted.

I take this occasion to call the attention of counsel to the making up of paper-books. A brief table of contents is not an index. In the present case one hundred and twenty-six pages are lumped together, without other clue than the single word " evidence " in the so-called index. It would greatly facilitate our labor, if counsel, in addition to the quotation of the evidence required by Rule XXIV. to be made in the assignments

of error, would add a reference to the printed page where such evidence is to be found in its appropriate place.*

Judgment reversed, and venire de novo awarded.

Argued February 25, 1891—Decided April 20, 1891.

---

* The entire "Index" to the appellant's paper-book in this case was as follows:

|                          |   | Page. |
|--------------------------|---|-------|
| Abstract of proceedings, | . . . . | 1 |
| Verdict and judgment,    | . . . . | 4 |
| History of the case,     | . . . . | 4 |
| Plaintiff's points,      | . . . . | 5 |
| Defendant's points,      | . . . . | 7 |
| Charge of court,         | . . . . | 8 |
| Assignments of error,    | . . . . | 18 |
| Argument,                | . . . . | 22 |
| Evidence (App.),         | . . . . | 1 |
| Opinion of Court (App.), | . . . . | 128 |

It is important to know in what stage of the trial of a case an offer is made, the admission or rejection of which is assigned for error. The offers in this case could be found only after a laborious hunt after them, made with great patience. See Hessel v. Bradstreet Co., ante 501, and the prefatory note to this volume.

