## Commonwealth *v.* Larkin and Company, Inc., Appellant.

Argued September 30, 1952. Before STERN, STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*Lee C. McCandless,* with him *Samuel W. Greer* and *Greer & Greer,* for appellant.

*John C. Dillon, Jr.,* with him *John R. Rezzolla,* Jr., *Joseph J. Laws, Thomas C. Evans, Phil H. Lewis,* Deputy Attorney General, and *Robert E. Woodside,* Attorney General, for appellee.

*Paul E. Beaver,* Assistant Counsel, with him *Albert E. Luttrell,* Assistant Counsel and *Lloyd S. Benjamin,* Acting Counsel, for Pennsylvania Public Utility Commission, intervenor appellee.

OPINION BY MR. JUSTICE CHIDSEY, November 18, 1952:

The decision in this case depends upon the validity of the order of the court below reading as follows: "Now, January 30, 1952, for the reasons hereinabove set forth, a writ of possession is directed to issue, to W. H. Larkin and Company, Inc., requiring it to remove its facilities and crane from the viaduct or elevated street known as the Wayne Street Viaduct."

Exceptions filed to this order on behalf of Larkin and Company, Inc. (here appellant) were dismissed March 27, 1952. In the order dismissing the exceptions

the court directed: "The cost of removing the attachments to this elevated street, known as the Wayne Street Viaduct, shall be borne by Larkin and Company, Inc.".

The factual background for this case begins in 1912. At that time the Borough of Butler enacted an ordinance which provided for the construction of an elevated street over certain railroad tracks in the borough. This elevated street was called "Wayne Street Viaduct". The ordinance also defined the land and easements condemned and made provision for the payment of damages. Before construction was started, however, The Public Service Company Law of 1913, P. L. 1374, July 26, 1913, gave the Commission the exclusive control of the construction and maintenance of all utility crossings. After application by the borough on June 16, 1914, the Public Service Commission issued a certificate of public convenience for the erection of the viaduct.

The appellant company's predecessor in title was W. H. Larkin. In accordance with the procedure existent at the time (1917) he was first awarded damages of $648.37 by the Commission. Upon appeal to the Common Pleas the cause was settled for $10,000.

In July, 1949, the successor to the Public Service Commission, the Public Utility Commission, ordered the appellee, the Department of Highways, to repair the Wayne Street Viaduct by removing the deck, straightening any of the steel, painting the structure and relaying the deck. Appellant has refused to remove fixtures, braces, facilities and a crane which it has attached to the viaduct. These attachments interfere with the repair and reconstruction contemplated by the Department of Highways.

Because of such refusal to remove, the appellee filed a petition for a writ of possession to issue, and after

answer and several hearings, the order of the lower court above quoted was made, exceptions were dismissed and this appeal followed.

Preliminarily, it should be pointed out that at the oral argument and in their briefs counsel for the parties differed greatly on their interpretation of what the Commonwealth (Department of Highways) was asking defendant to do. Counsel for W. H. Larkin Company, Inc. took the position that the Commonwealth sought to make the company remove all of its buildings from beneath the viaduct. Counsel for the Commonwealth, on the other hand, contend that the request was limited to removal of all of the company's facilities, including a crane, which are attached to the viaduct. The order of court makes it clear that the court below framed its decree in accordance with the postion taken by the Commonwealth upon this appeal. It may be, as a practical matter, as appellant's counsel stated, that this will result in a temporary or permanent shut-down of the company's facilities. However, this becomes legally immaterial if the Commonwealth is entitled to the order of the court below.

The success or failure of this appeal depends upon whether or not the 1912 ordinance of the borough condemned and took such property interests of the appellant's predecessor in title as included the right to make the proposed repairs and reconstruction. We therefore turn to the ordinance.

The title to the ordinance provides that it is for ". . . the construction of an elevated public street . . . and . . . for the condemnation and taking of land and rights necessary in the construction and *maintenance* of such elevated public street, and . . . for the assessment and determining of damages and benefits occasioned by such taking and the construction and *maintenance* of such elevated . . . street, . . .".

Section 2 of the ordinance provides: "That the *land* and *rights* needed for and necessary in the construction, *maintenance* and use of said elevated public street and the necessary supports therefor in accordance with plans and specifications made by H. O. Carson, Borough Engineer, and more particularly described as follows, to-wit: (and then continues with a detailed description)."

In Section 3 of the ordinance which provides for the ascertaining of damages it states: "That if the authorities of the borough of Butler and the owners whose *lands and easements* are taken and appropriated are unable to agree upon the damages and benefits occasioned and to be occasioned by the *construction, maintenance and use of such public street,* the proper officers of the borough of Butler be and are hereby authorized and directed to cause the said damages and benefits to be assessed and determined in accordance with the Act of Assembly of May 16, 1891, its supplements and amendments, and the proper officers of the borough of Butler be and are hereby authorized and directed to make, execute and deliver bonds to the aforesaid several land owners to secure to them and each of them damages for the property, rights or easements herein taken, injured or destroyed." (Emphasis supplied throughout).

The specific condemning portion of the ordinance provides: "The said proposed elevated street having a width at the surface of the street, including foot walks of 45 feet, and having a clearance above the main tracks of the Bessemer & Lake Erie Railroad of at least twenty-seven (27) feet, and a clearance of at least twenty-two (22) feet above the rails of the main track of the Pittsburgh & Western or Baltimore & Ohio Railroad; together with so much of the surface of the land of E. Mackey, the Pittsburgh, Bessemer &

Lake Erie Railroad Company, the Pittsburgh & Western Railroad Company or Baltimore & Ohio Railroad Company, *W. H. Larkin* and G. D. Kamerer *as may be needed and necessary in the construction, maintenance and use of the aforesaid foundations and pedestals as above located and supporting a street of the width above mentioned,* upon such foundations and pedestals, *over and across the aforesaid lands,* be and the same is *hereby condemned and taken for the purpose of constructing, maintaining and using said elevated public street. . . .".* (Emphasis supplied)

The continued and consistent use of the word "maintenance" in the ordinance and a reading of the ordinance in its entirety convinces us that included within the condemnation was the right to make repairs without interference. In *Brewer et ux. v. Commonwealth,* 345 Pa. 144, 146, 27 A. 2d 53, this Court used the following language: " 'There cannot be a doubt that, in the laying out and establishment of a highway, the right of repairing and maintaining, as well as of originally constructing it, is embraced, and that therefore, when damages are assessed to a person for laying out and constructing a road upon his land, those damages include compensation as well for the repairing of such road as its original construction. . . .' ".

In his testimony, H. O. Carson, who was the borough engineer at the time the viaduct was constructed, stated that Larkin was allowed at that time to attach the crane and other facilities to the viaduct. Appellant argues, in an incidental manner, that this is in the nature of an estoppel against the present appellee.

However, this testimony of the borough engineer does not aid the appellant. The ordinance defined the taking and nothing that the engineer said or did could affect the right of the city. The extent of the property taken must be determined by corporate action, and it

was not within the authority of the engineer to permit the appellant's predecessor in title to attach the facilities including the crane to the overhead viaduct: *M. J. Wilson v. City of Scranton,* 141 Pa. 621, 630, 21 A. 779, where this Court said: "The limit of the public right is the public necessity, and the residue, as it may be called, of the use of the land, remains unaffected in the owner. The extent of such residue depends on the nature of the public use, and that may vary all the way from the exclusive occupation for a schoolhouse or public building to the easement of running a gas pipe underneath or a telegraph wire overhead. The city was therefore entitled to show the extent of its actual taking. *This, however, could only be shown by corporate action.* The city would not be bound by the opinions of experts, even of the city engineer, as to the amount of interest in the land that should be taken. . ." (Quoted with approval in *Philadelphia Felt Co.'s Appeal,* 293 Pa. 551, 556, 143 A. 208). (Emphasis supplied).

Order affirmed. Costs to be paid by appellant.