# Young *v.* Upper Yoder Township School District, Appellant.

Argued October 10, 1955. Before STERN, C. J., STEARNE, JONES, MUSMANNO and ARNOLD, JJ.

*James R. Graham,* with him *Graham & Graham,* for appellant.

*George M. Spence,* with him *Spence, Custer, Saylor & Wolfe,* for appellees.

OPINION PER CURIAM, November 30, 1955:

The judgment entered in this case is affirmed on the following excerpts from the opinion of Judge. GRIFFITH in the Court below:

"This is a motion for new trial made by the defendant after a verdict for the plaintiffs in the sum of $33,750.00 awarded by a jury and tried before the Honorable JOHN H. McCANN, President Judge, now deceased.

"On June 2nd, 1952, the defendant School District condemned 6.426 acres of the plaintiffs' land for school purposes. The land so condemned was a portion of a tract containing 12.92 acres purchased by the plaintiffs on January 23rd, 1943, of which they had remaining at the time of the condemnation approximately 11 acres. The Viewers appointed by the Court of Quarter Sessions awarded the plaintiffs $13,500.00, and the present proceeding followed the plaintiffs' appeal from the Viewers' award. In 1941 the plaintiffs acquired a tract containing 20.673 acres, in 1943 the tract containing 12.92 acres, which is the subject of this proceeding, and

in 1947 a tract containing 9.381 acres, or a total of 42.974 acres of land in Upper Yoder Township, together with certain rights of ingress, egress and regress to public highways. Title was originally acquired by plaintiffs in the name of the Home Construction Company, which was wholly owned by them, but was later reconveyed to the plaintiffs without consideration.

"The plaintiffs erected and disposed of 29 dwellings and also 17 lots of vacant land upon 10 of which dwellings had been erected by the purchasers prior to June, 1952, when the portion of the land with which we are concerned was condemned.

"After the Jury viewed the premises the case came on for trial and the testimony as to value was as follows:

|  | Before Condemnation | After Condemnation |
|---|---|---|
| P. C. Albert Young | $68,640.00 | $25,110.00 |
| Dell Comiskey | $67,850.00 | $22,920.00 |
| George Minno | $81,469.00 | $36,529.00 |
| E. A. Hower | $63,050.00 | $21,070.00 |

"The foregoing witnesses all testified on behalf of the plaintiffs. The defendant's witnesses testified as to value as follows:

|  | Before Condemnation | After Condemnation |
|---|---|---|
| E. Raphael Cherry | $17,600.00 | $8,000.00 |
| William R. Beam | $11,000.00 | $5,000.00 |
| Robert E. Miller | $15,400.00 | $8,400.00 |
| Mark Cauffiel | $17,500.00 | $7,500.00 |

"The defendant assigned 22 reasons in support of its motion for a new trial.

"We shall first consider defendant's reason 13 and 6(c). These reasons suggest that the trial judge abused his discretion in excluding evidence concerning the cost of acquisition of the condemned land of the plain-

tiffs and in excluding from evidence the deed by which title was acquired.

"It appears that plaintiffs acquired title to 12.92 acres for a consideration of $3,000.00 on January 23rd, 1943, and that at the time of condemnation on June 2nd, 1952, or approximately 9½ years later, they still owned approximately 11 of the original 12.92 acres. The plaintiffs placed a valuation of $68,640.00 on these 11 acres, and the defendant believes that the action of the trial judge in excluding evidence of the cost of acquisition was an abuse of discretion by reason of the great disparity between the price the plaintiffs paid for the land and the value they claimed it was worth at the time of condemnation.

"In United States vs. Certain Parcels of Land, 144 F. 2d 626, 155 A.L.R. 253, the United States Circuit Court of Appeals for the Third Circuit, in 1944, took the view that, although under the federal concept of market value the plaintiff could offer the sale price of the condemned property in evidence, yet the Pennsylvania rule would exclude such evidence on the basis of market value in condemnation proceedings being not the price for which one person may have bought or sold his property but the judgment of the community as to value. However that may be, it is clear especially since Berger v. Public Parking Authority of Pittsburgh, 380 Pa. 19, that generally, whether for the purpose of testing his credibility or to establish value or both, an owner may be asked on cross-examination what he paid for the property and the price at which he offered to sell it if purchase or sale was not too remote. See also Brown's 'Pennsylvania Evidence' 66. This is the rule elsewhere. 18 Am. Jur. Eminent Domain, Sec. 351, page 994; 20 Am. Jur. Evidence, Sec. 374, page 340. In the Berger case the sale was made 3 years and 7 months prior to the condemnation. In that case the majority of

the court thought that the cross-examination of the plaintiff on his agreement to sell in July of 1947 for $36,000.00 'was particularly allowable . . . because West Brown, a real estate expert for the owners, testified that . . . in 1948 . . . his appraisal was $75,000.00 . . . and that his appraisal was the same in 1951 (when the land was condemned) as it was in 1948,' thus discrediting this witness' testimony as to his 1951 valuation, since his 1948 valuation was obviously inflated as compared to the selling price in 1947, just one year before and hence clearly not too remote.

"In the present case the trial judge refused to permit cross-examination of the plaintiff as to the purchase price on the ground that the purchase was too remote, since it occurred approximately 9 1/2 years before the condemnation and since the character of the neighborhood had been greatly changed in the meantime. In spite of the great disparity between the purchase price of $3,000.00 in 1943 and plaintiffs' valuation of the 11 acres remaining of the 12.92 acres in 1952 in the sum of $68,640.00, we think the trial judge did not abuse his discretion in refusing to permit such cross-examination.

"As was said in Thompson v. American Steel & Wire Co., 317 Pa. 7, 11, 'His (the trial judge's) conclusion or decision on such points will not be interfered with on appeal save for manifest abuse of power.'

"The defendant's reasons for a new trial numbered 1, 2, 3 and 4, are directed against the alleged excessive amount of the verdict.

"While we have come to the conclusion that the verdict of $33,750.00 was excessive, we do not believe that it must be corrected by the unqualified award of a new trial. Nor, for the reasons given above, do we think that the admission of evidence of the plaintiffs' acquisition price is the proper method to correct it.

"The plaintiffs' witnesses testified that the damage caused by the condemnation was between $41,980.00 and $44,940.00. The defendant's witnesses testified that the damage sustained was between $6,000.00 and $10,000.00. The Viewers awarded $13,500.00. In Crumrine v. Washington County Housing Authority, 376 Pa. 234, 238, the court said that the circumstance that the verdict was practically the same as the Viewers' award tended to show that the verdict was not excessive. In this case the verdict was 2 1/2 times the Viewers' award which is, we believe, a circumstance tending to show that the verdict was excessive. The fact that a verdict is in excess of a Viewers' award is not of itself sufficient to support a conclusion that it is excessive. For example in the case of Fisher v. Allegheny County, 324 Pa. 471, the verdict was sustained although it was approximately 6 times the Viewers' award. Nevertheless in considering whether or not a verdict is excessive the fact that it greatly exceeds the Viewers' award is an important circumstance to be considered. We are all familiar with the land which was condemned by the School District in this case and we have read the testimony with care. We are of the opinion that a verdict of $33,750.00 was excessive and was against the weight of the evidence and that in order to accomplish a right and just result the plaintiffs should remit that portion of the verdict in excess of $25,000.00, which we believe would be ample compensation for the damages sustained.

"The defendant also advanced numerous other reasons for a new trial in none of which do we find merit.

"In reason 6 (d) the defendant suggests that the court erred in excluding evidence concerning the probable costs of developing the condemned land. Apparently the defendant bases this reason for a new trial on its interpretation of the testimony of the plaintiffs' wit-

nesses to the effect that they arrived at a valuation for the condemned tract on a basis of it having been completely improved by paved streets with all utilities, and then failed to deduct the amounts that it would likely cost to build such streets and install such utilities. We do not read the testimony of the plaintiffs' witnesses in this light. We are satisfied that their testimony as to value was based on the condition of the land as it was at the time of condemnation and not on its condition had it been intersected by paved streets and supplied with all utilities.

"In the defendant's reasons for new trial numbers 7, 8, 9 and 11 it is suggested that the court erred in admitting testimony of the development of Homestead Acres, in admitting testimony concerning the number of sales of individual lots and the sales of improved lots in the surrounding area, and in permitting the plaintiff to testify as to the number of lots which he had previously sold out of the original tract of 12.92 acres and in his adjoining tracts.

"It will be noted that the testimony of the plaintiffs' witnesses was not as to the number of individual lots into which the condemned area could have been subdivided or the price which these lots might bring when and if sold. Nor did the testimony concern the selling price of lots in the immediate vicinity which had previously been sold by the plaintiffs. We think testimony to the effect that there had been a number of sales of individual lots in the surrounding area and that a number of lots in the immediate vicinity had been improved by the erection thereon of dwelling houses and that the plaintiffs had previously sold lots for building purposes in the neighborhood as well as in the remaining portion of the land condemned was admissible to show not only the type of the neighborhood but also that the tract condemned was then available for sale as

building lots and had a market value for such purpose at the time of the condemnation.

"In reasons 5 (a), 10 and 12 the defendant avers error on the part of the trial judge in admitting speculative testimony as to the value of the plaintiffs' land, in admitting any testimony as to the foot frontage of plaintiffs' land on proposed streets, and in permitting testimony as to damages based on an irrelevant and speculative measure of damages.

"As we read the testimony the defendant has assumed without justification that the plaintiff and his witnesses based their valuation of the condemned land on the selling price of the lots into which the land could be divided. There is no testimony in the record showing the number of building lots into which the condemned land could have been divided and what such lots would be worth separately, which procedure was condemned in Pennsylvania Schuylkill V. R. Co. vs. M. J. Cleary, 125 Pa. 442. There is testimony as to the amount of foot frontage which was available along the streets already laid out on the ground by the plaintiffs before condemnation at the intersection of which streets concrete monuments had been erected. Such testimony was not objectionable. . . From reading the testimony of the plaintiffs' witnesses as a whole we are satisfied that the valuations given by them did not represent the total amount which might in the future be realized from the sale of the land as individual lots without making allowance for development costs. Consequently we do not believe that their valuations depended upon the speculative value of the individual lots in the future.

"The defendant's 16th reason for a new trial alleges that the Charge of the Court and its ruling on defendant's points (which he affirmed) were so contradictory and confusing as to require a new trial.

"The defendant calls our attention to the fact that the trial judge stated that there is no doubt but that the plaintiffs' land was a development of homestead property for the purpose of having people buy lots. A reading of the testimony both of the plaintiffs' witnesses and of the defendant's will show the accuracy of this statement. Certainly the testimony supports the trial judge's statement that the value of the plaintiffs' property consisted not in its adaptability for a factory site or for farming purposes but for residential building lots. As we see it, there is no conflict between this statement on the part of the trial judge and his affirmation of the defendant's points for charge which correctly stated the rule of law as to the measure of damages being the difference between the fair market value of the whole tract before and after condemnation and that the Jury are to value the tract as a whole and not to determine how it could best be divided into building lots and the price at which each lot could be sold.

"The defendant also complains about that portion of the Charge which reads as follows: 'On the other hand, you have the testimony of the witnesses called for the defendant, and there is such a large difference, such a tremendous discrepancy in the testimony that it makes it very difficult for a jury to decide the case without feeling that somebody deliberately did not tell the truth.'

"The defendant suggests that this sentence in the Charge is reversible error in view of the observations made by the Supreme Court in Knight v. Allegheny County, 371 Pa. 484. An examination of the opinion in that case shows that the trial judge told the jury that the testimony was such that they would have to make a 'guess' in order to arrive at a verdict. For example, on page 487 the following statement of the trial judge was quoted: 'You have to make the guess here, not me.'

"Finally the defendant in its reason 5 (c) suggests that there was error in admitting any testimony whatever concerning the plaintiffs' rights to damages when the Pennsylvania Realty Transfer Tax Act had not been complied with.

"The Act of May 27, 1951, P.L. 1742, as amended by the Act of May 29th, 1953, P.L. 257, 72 P.S. 3283, provides in effect that no document subject to the tax shall be made the basis of a legal action nor shall proof thereof be offered in evidence unless the required stamps are affixed. As we have seen, the plaintiffs purchased the condemned land in 1943 in the name of a corporation known as the Home Construction Company, which was wholly owned by them. Later, after the effective date of the Act, the plaintiffs had the corporation make a conveyance of the property to them as individuals. It appears from the testimony that plaintiffs' attorney, without the knowledge of the plaintiffs, made an affidavit showing a nominal consideration at the time the deed from the Home Construction Company to the plaintiffs was offered for record. This was done because the transfer was a 'straw man' transaction and no real consideration passed between the grantor and the grantees. It will be noted that the plaintiffs did not offer the deed from the Home Construction Company to themselves in evidence, relying upon the fact that in the defendant's condemnation resolution of June 2nd, 1952, the plaintiffs were named as owners of the land. This resolution was introduced in evidence. It was the defendant which sought to get into the record the deed from the Home Construction Company to the plaintiffs for the obvious purpose of attempting to get before the jury the amount of the nominal consideration mentioned in the affidavit of value taken by the plaintiffs' attorney at the time the deed was offered

for record. We believe the exclusion of such evidence on the part of the trial judge was entirely proper."

Judgment affirmed.