Snyder *v.* Commonwealth, Appellant.

16

Argued March 28, 1963. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

reargu-
ment refused August 2, 1963.

*Thomas J. Dempsey,* Special Assistant Attorney
General, with him *Robert W. Cunliffe,* Assistant Attor-
ney General, *John R. Rezzolla, Jr.,* Deputy Attorney
General, and *Walter E. Alessandroni,* Attorney Gen-
eral, for Commonwealth, appellant.

*T. Robert Brennan,* with him *Brennan and Brennan,*
for appellees.

OPINION BY MR. JUSTICE ROBERTS, July 15, 1963:
In August, 1958, the Commonwealth, by condemna-
tion for construction of a limited access highway, took
all of appellees' land (3 acres) located in the Borough
of Churchill, Allegheny County. The property, ac-
quired by appellees in 1950, lay between almost parallel
highways, with frontage of 370 feet on the William

Penn Highway Route 22, a major artery connecting Pittsburgh with the Pennsylvania Turnpike, and frontage of 365 feet on the Northern Pike (Old Route 22). Of the tract, 1.3 acres was within the right-of-way lines of the highways and subject to an easement in the public. The remaining portion was undeveloped. The board of view awarded appellees $12,745.37. Both sides appealed to the court of common pleas where the jury returned a verdict of $40,000 plus detention money of $7,400. The Commonwealth's motions for judgment n.o.v. or new trial were denied by the court en banc.

At the time of condemnation, the property was restricted by a borough zoning ordinance to residential use. Appellees' real estate expert testified at trial that in adjacent and nearby municipalities, all the property along both sides of Route 22 had been zoned commercial and that rapid commercial and institutional development was taking place. However, in Churchill Borough, the only change made prior to this condemnation was a rezoning of an area along Route 22 for institutional purposes to permit construction by Westinghouse of a research and development plant.[1] He further testified that there was a scarcity of land for commercial use in the area and valued the property in question as of the date of the taking at $72,000. The Commonwealth's expert valued the property at $8,500.

The Commonwealth contends first that, the property being zoned solely for residential use, it was improper to permit the introduction of evidence of value for a presently unavailable use without proof of the reasonable likelihood of a zoning change in the near future, and that such proof was not presented.

The general rule is that evidence of increased value is inadmissible where the increase would result from

---

[1] An application for the rezoning of another nearby property had been denied, but the appeal was pending at the time of this condemnation.

a use proscribed by zoning regulations. 4 Nichols on Eminent Domain §12.322 (Rev. 3d ed. 1962). However, an exception to this rule has been recognized in jurisdictions passing on this issue. Nichols, §12.322[1] states it as follows: "Where the enactment of the zoning restriction is not predicated upon the inherent evil of the proscribed use—in other words, where the forbidden use is malum prohibitum rather than malum in se—and there is a possibility or probability that the zoning restriction may in the near future be repealed or amended so as to permit the use in question, such likelihood may be considered if the prospect of such repeal or amendment is sufficiently likely as to have an appreciable influence upon present market value. It follows from the foregoing that such possible change in the zoning regulations must not be remote or speculative." (Footnotes omitted.) See, e.g., *U.S. v. Certain Land in Baltimore County, Md.,* 209 F. Supp. 50 (D. Md. 1962); *People v. Donovan,* 57 Cal. 2d 346, 369 P. 2d 1 (1962); *State Highway Commissioner v. Eilender,* 362 Mich. 697, 108 N.W. 2d 755 (1961); *State v. Gorga,* 26 N.J. 113, 138 A. 2d 833 (1958); *Masten v. State,* 9 N.Y. 2d 796, 175 N.E. 2d 166 (1961).

Recognition of both the rule and the exception would be in keeping with Pennsylvania decisions on valuation. Ordinarily, "In estimating the market value of the land everything which gives it intrinsic value is a proper element for consideration. . . . It is its general market value for any purpose that will induce persons to purchase, which is the true test." *Shenango & Allegheny R. Co. v. Braham,* 79 Pa. 447, 453 (1876); see *Sgarlat v. Kingston Borough Board of Adjustment,* 407 Pa. 324, 180 A. 2d 769 (1962). The property owner may show the highest and best use of his land, provided such use is not speculative or remote. *Earl M. Kerstetter, Inc. v. Commonwealth,* 404 Pa. 168, 171 A. 2d 163 (1961). It is quite clear that one factor which

strongly affects market value of property is zoning as it exists at the time of purchase or condemnation and as it may be changed in the reasonably near future to permit economically higher (or lower) use.

The Commonwealth's contention that appellees failed to prove the reasonable probability of a zoning change in the near future must fail. "The question of the existence of a reasonable probability of an imminent change in zoning is a question of fact." Nichols, §12.322[2]. Although appellees' witness was an expert on real estate valuation generally, but not on zoning, he was not, as appellant contends, rendered unqualified to testify as to the trends in the area, the best use of the land, and the basis on which he arrived at his valuation. See *Gilleland v. N. Y. State Natural Gas Corp.,* 399 Pa. 181, 159 A. 2d 673 (1960). While there was no direct testimony that a zoning change was reasonably likely in the near future, there was sufficient evidence, including a view of the property and the surrounding area, from which the jury could so find.

To the rule and exception quoted above, Nichols adds the following at §12.322[1], para. 2: "An important *caveat* to remember in applying the rule is that the property must not be evaluated as though the rezoning were already an accomplished fact. It must be evaluated under the restrictions of the existing zoning and consideration given to the impact upon market value of the likelihood of a change in zoning." Based on this caveat, the Commonwealth further argues that the value given by appellees' witness was a value as if rezoning had actually occurred. A careful examination of the testimony of appellees' expert, both on preliminary examination and before the jury, indicates that his valuation was based on existing zoning together with a likelihood of change, and not on an accomplished change of classification. As stated by the court below: ". . . [I]t appears clear that he was con-

sidering the likelihood of the zoning being changed from residential uses to either *commercial uses or institutional uses*. In considering the likelihood of a future change in zoning to one of two classifications, he could not know to which classification the change would be. He could not place a value on the property as if it had already been rezoned to a classification unknown to him at the time he made the appraisal."

The second major contention advanced by the Commonwealth is that the trial court erroneously permitted a prejudicial change of theory in the presentation of appellees' case. Before the board of view, appellees' expert witness testified that the damage sustained by the taking was $36,000, based on residential use of the property. In the complaint which perfected the appeal to the court of common pleas, damages of $36,000 were estimated. However, at trial, the valuation by appellees' witness was $72,000, based upon possible commercial or institutional use.

An appeal from a board of view is heard by the court of common pleas de novo as if it were being tried for the first time. See *Wilson v. City of Scranton*, 141 Pa. 621, 630, 21 Atl. 779 (1891) ; cf. *Recht v. Clairton Urban Redevelopment Authority*, 402 Pa. 599, 168 A. 2d 134 (1961). "The contention of the defendant is that on the trial in court the plaintiff is confined to the elements of damage claimed before the jury of view. The reasoning is fallacious. The defendant was not obliged to present his whole case to the viewers. He may not have then known how it would affect the land; and it is not alone *his* estimate which controls, but also that of his witnesses." (Italics supplied.) *Orange Home v. Montgomery County*, 22 Montg. Co. L. Rep. 154 (C.P. 1906), aff'd per curiam, 218 Pa. 204, 67 Atl. 209 (1907). The theory of appellees' case did not change; the only change was in the testimony of their expert who before the board of view had testified only as to

use under the existing classification without comment on the possibility of a zoning change.

Third, the Commonwealth argues that the award of $40,000 (plus detention) was excessive, since the viewers' total award was $12,745.37, and the appeal from the board of view claimed damages of only $36,-000. The verdict was not unjustified by the evidence presented to the jury. The difference between the award of the board and the verdict is not so great as to warrant a reduction in amount or a new trial, and the disparity between the two figures is explained by the additional testimony presented at trial. See *Vaughan v. Commonwealth,* 407 Pa. 189, 180 A. 2d 12 (1962). Moreover, this contention ignores the clear language of the complaint to the court of common pleas, which recites: "5. The plaintiffs *estimate* the real value of the property . . . [to be] $36,000.00." (Emphasis supplied.) The figure was, as the quoted language indicates, merely an estimate, not a limitation on the possible award.

The Commonwealth's fourth contention is that the trial court abused its discretion in refusing to allow the cross-examination of one of appellees as to the purchase price paid over eight years earlier. The general rule is that an owner of property involved in condemnation may be cross-examined as to purchase price provided the purchase date is not too remote. The admissibility of such evidence is for the sound discretion of the trial court. *Frontage, Inc. v. Allegheny County,* 408 Pa. 165, 182 A. 2d 519 (1962). In *Lutz v. Allegheny County,* 327 Pa. 587, 195 Atl. 1 (1937), this Court ruled that it was not an abuse of discretion to allow cross-examination of the owner as to price paid seven years earlier where he had previously testified as to value. So also in *Kelly v. Allegheny County Redevelopment Authority,* 407 Pa. 415, 180 A. 2d 39 (1962), after an interval of over six years. In the *Frontage*

case, supra, the interval was less than two years. On the other hand, this Court has held that no abuse of discretion was committed by refusing to allow cross-examination as to purchase price paid nine years prior to condemnation. *Young v. Upper Yoder Township School District,* 383 Pa. 320, 118 A. 2d 440 (1955). Therefore, under the circumstances here presented, we cannot find that the trial court abused its discretion by refusing the requested cross-examination.

The final contention raised by the Commonwealth is that the trial court erroneously admitted testimony prejudicial to its cause. On being questioned about the use to which the condemned property and an adjacent piece of land were being put, appellees' valuation expert replied that they were being held for commercial use. The court properly struck the reference to commercial use, with appropriate instructions, and allowed the testimony that the properties were being "held" to stand. This meant nothing more than that the properties were not then being put to active use. Inquiry concerning present use is material, and the answer allowed was proper.

On the same issue, one appellee testified that the land was being held for commercial purposes. This answer was permitted to stand. In support of its allegation of prejudicial error, the Commonwealth relies on *Pennsylvania Schuylkill V. R. Co. v. Cleary,* 125 Pa. 442, 17 Atl. 468 (1889), in which it was held error to admit testimony explaining why the deceased property owner had refused to sell his land. This testimony was obviously objectionable since the late owner had died over three years prior to the trial, and the testimony offered was hearsay. The *Cleary* case is not controlling in the existing factual situation. Determination of the relevancy of such testimony is largely a matter of judicial discretion. See 1 Jones on Evidence §198 (5th ed. 1958). There was neither abuse of discretion nor

a showing of prejudice against the Commonwealth. The trial court correctly instructed the jury on the essential elements to be considered in reaching its verdict, and the verdict was in accordance with these instructions.

Examination of the record fails to disclose any basis for depriving appellees of the jury's award. The court below properly refused to do so.

Judgments affirmed.

---

DISSENTING OPINION BY MR. JUSTICE COHEN:

I dissent from the majority opinion on the ground that there was insufficient evidence presented to the jury on the likelihood of a change in zoning. I agree with the statement by the majority that in order for evidence of a possible zoning change to be admissible, the prospect of repeal or amendment of the zoning ordinance *must be reasonably probable and not speculative or remote.* However, I disagree with the majority's application of this principle to the facts—or more accurately, the lack of facts—of this case.

Appellee's evidence on the likelihood of change can be summarized as follows: No commercial enterprises are located along Route 22 in Churchill Borough, the area involved in this case. The only nonresidential use in the relevant area was the Westinghouse Research property which had been changed from residential to institutional. However, no other zoning changes had been made along Route 22 in Churchill Borough. Aside from the change secured by Westinghouse, the Churchill Borough authorities refused to rezone the property of an adjoining owner from residential to commercial in 1957.

It is undisputed that Route 22 is zoned commercial in bordering municipalities, but such zoning classifica-

tions are promulgated by different governmental bodies than Churchill Borough and hence have little bearing on the instant case. From this meager evidence, appellee's expert witness on *value*—who was admittedly not an expert on zoning—was permitted to conclude that it was reasonably likely the area in question would be zoned commercial in the near future. It should also be noted that the evidence discloses that appellant had not made application for a zoning change.

The burden of proving the likelihood of a change in zoning is upon the party asserting such probability and, because of the uncertainties inherent in such change, that burden is not easily satisfied. Thus, in the absence of a well-defined trend of zoning changes in a particular area, it would be pure surmise for a judge or jury to attempt to predict how the members of a borough council or zoning board will vote. It is common knowledge that the various factors which affect the votes of individual zoning board members, compounded by the vagaries which affect the vote of the collective body, defy any type of prediction based upon *reasonable probability.*

Keeping in mind the high standard of proof mentioned above, I find that the evidence presented by appellee did not permit more than a remote speculation on the possibility of a future zoning change, and this is especially true, where, as in this case, appellant had not taken any steps to secure such change. Cf. *Redondo Beach School District of Los Angeles County v. Flodine,* 153 Cal. App. 2d 437, 314 P. 2d 581 (1957).

I dissent.

Mr. Chief Justice BELL and Mr. Justice EAGEN join in this dissenting opinion.