## Perkiomen Township Municipal Authority v. Berkezchuk

458

*Clark F. Hess,* of *Butera and Detwiler,* for plaintiff.

*Bernard V. DiGiacomo,* of *DiGiacomo and Lynch,* for defendants.

GROSHENS, *P. J.,* December 23, 1974—This is an appeal from an order of the court declaring the lien for installation of a sanitary sewer filed by plaintiff, Perkiomen Township Municipal Authority, against defendant property owners, George W. and Carolyn Berkezchuk, in the amount of $2,040 to be valid and enforceable.

The premises in question abut two parallel streets in Rahns, with frontages of 125 feet on Gravel Pike and 130 feet on Centennial Street. Some time prior to November 20, 1971, plaintiff caused sewer lines to be installed in both streets. Defendants' residence faces Gravel Pike; therefore, they have agreed to pay the assessed amount of $1,000 at $8 per foot-front for their frontage on Gravel Pike. However, they have refused to pay the additional $1,040 claimed by the authority as due for the frontage on Centennial Street, contending they have received no benefit from the sewer in that street.

Under the zoning ordinance of the township, the premises may not be subdivided to permit erection of any other dwelling. Nevertheless, the stipulation of facts, filed July 25, 1974, lists three variances for subdivisions which were granted to owners of properties in the area similar to defendants' property the last three years. Stipulations 12 and 13 deal with the benefit of the Centennial Street sewer line if a variance were obtained and another building constructed, or if the rear portion of defendants' property were joined with that of a neighbor and a structure built on the assembled property.

The authority derives its power to assess defendants' property from the Municipality Authorities Act of May 2, 1945, P.L. 382, sec. 4, subdivision B.(s), as amended, 53 P.S. §306 B.(s), which allows a municipality "[t]o charge the cost of construction of any sewer or water main constructed by the Authority against the properties benefited, improved or accommodated thereby according to the foot frontage rule. Such charges shall be based upon the foot frontage of the properties so benefited, and shall be a lien against such properties."

The basis of defendants' argument is that their property is not benefited by the sewer line in Centennial Street, since their house is not connected to it and the zoning, as it now stands, prohibits subdivision of the property for another structure to be built and connected to that line. This contention is largely based on Upper Moreland-Hatboro Joint Sewer Authority v. Pearson, 190 Pa. Superior Ct. 107 (1959). Such reliance is misplaced under the circumstances of this case.

There is a presumption that a property is benefited by the construction of a sewer, but this presumption may be rebutted: Pearson, supra; Hartin v. Abington Township, 23 D. & C. 2d 505, 76 Montg. 617 (1960). All taxation is presumably for the benefit, directly or indirectly, of the taxpayer or his property: Elizabethtown Borough v. Mt. Tunnel Cemetery Co., 303 Pa. 233 (1931). The foot-front rule is not a principle of taxation, but rather a convenient method for practical adjustment of proportional benefits, and the fact that the premises are not presently using the sewer lines is not sufficient to rebut the presumption of benefit: Emmaus Sewer Authority v. Lukas, 31 Lehigh 274 (1965).

The key to whether or not a property may be as-

sessed for frontage on two streets though only connected to the sewer in one is whether or not the sewers were put in at the same time. See Upper Gwynedd Township Authority v. Caltabiano, 206 Pa. Superior Ct. 476 (1965). Caltabiano involves a corner lot, but the principle is the same. As the court in that case points out: "The present case is similar to the situation presented where three lots abut upon a sewer constructed in a street; one lot is 50 feet in width, another 100 feet in width and another 300 feet in width. Single connections are made from the residence on each one of the lots. It might be argued that each one received the same amount of benefit but it has been considered equitable to assess the 100-foot lot twice as much as the 50-foot lot and the 300-foot lot six times as much as the 50-foot lot.": 206 Pa. Superior Ct. at page 479.

The court goes on to discuss the hypothetical case of a property owner whose lot abuts two streets, in one of which the sewer stops only five feet past his property line and in the other continues for 200 feet. Naturally, he would choose to connect his house to the shorter line if he only had to pay for the one to which it is actually connected. This would hardly be equitable to his neighbor who has only one frontage and must pay for his entire 100 feet or whatever he has.

The situation is different when the property is already served by one sewer, and the municipality installs another and attempts to assess the owner for a supposed benefit. The owner had no choice as to which sewer he would connect his home. The two cases cited by defendants (Upper Moreland-Hatboro Joint Sewer Authority v. Pearson, supra. and Cheltenham Township v. Raab, 89 Montg. 16 (1967)), both deal with the problem of subsequent

sewer installation when the property is already adequately served. The presumption of benefit is rebutted in such a case, as long as the zoning ordinance precludes subdivision. In Pearson, there was even a stipulation to the effect that the property was not, in fact, benefited.

Zoning has been taken into consideration in the subsequent sewer situation. In Hartin v. Abington Township, supra, the court said the presumption of benefit was not rebutted because the property could be subdivided and used for commercial purposes. In Upper Moreland-Hatboro Joint Sewer Authority v. Fulmor Heights Home Ownership Association, 27 D. & C. 2d 217, 79 Montg. 126 (1961), an assessment for new sewers was upheld in spite of the fact that the housing development was adequately served by previously installed sewers, because the new sewers benefited open, unused area. Even though defendant was not planning to build in the open area, the court said that, because the zoning ordinance allowed dwellings to be built (on one parcel a special exception would be necessary), the property was subject to assessment.

Plaintiff argues that the variances granted to owners of similar properties in the vicinity indicate that defendants could also obtain a variance to subdivide their property, and the Centennial Street sewer would then be a benefit. An analogy may be drawn to eminent domain cases in which the probability of a change in zoning restrictions may influence a determination of present market value: Snyder v. Commonwealth, 412 Pa. 15 (1963). The likelihood of obtaining a zoning change may be considered in determining the existence of a benefit, if it is not too speculative. See Cheltenham Township v. Oller, 85 Montg. 377 (1965).

The principle on which assessment cases are based is that when property is first benefited by a municipal improvement, it is assessable therefor, but once it has enjoyed the particular improvement, the property is not assessable for a second improvement of the same character: Upper Moreland-Hatboro Joint Sewer Authority v. Pearson, supra. In the present case, since the two sewer lines were installed at the same time, there was no previous benefit, and defendants are required to pay the entire assessment. The possibility of acquiring a variance is not dispositive under the circumstances, but the fact that it is probable that defendants could obtain one would create an additional benefit.