478 A.2d 42

FIRST PENNSYLVANIA BANK, N.A.,
Appellee,

v.

PEACE VALLEY LAKESIDE COMMUNITY AND AGRICULTURAL TRUST, INC., and Frank E. Elliott and Stephanie H. Elliott, his wife, and Upper Providence Town Center and Open Space Trust, Inc.

Appeal of PEACE VALLEY LAKESIDE COMMUNITY AND AGRICULTURAL TRUST, INC. and Upper Providence Town Center and Open Space Trust, Inc.

FIRST PENNSYLVANIA BANK, N.A., Appellant,

v.

PEACE VALLEY LAKESIDE COMMUNITY AND AGRICULTURAL TRUST, INC., and Frank E. Elliott and Stephanie H. Elliott, his wife, and Upper Providence Town Center and Open Space Trust, Inc.

Superior Court of Pennsylvania.

Argued March 28, 1984.

Filed June 22, 1984.

John A. Van Luvanee, Doylestown, for appellant in No. 3612 and for appellee in No. 3472.

William G. Kozub, Doylestown, for appellants in No. 3472 and for appellees in No. 3612.

Before BROSKY, WIEAND and McEWEN, JJ.

McEWEN, Judge:

These cross-appeals have been taken from the order of the distinguished Judge Edward T. Biester, Jr., which established, pursuant to the provisions of the Deficiency Judg-

ment Act, 42 Pa.C.S. § 8103 *et seq.*, $385,000.00 as the fair market value of certain real property. We affirm.

The real property in question, an irregular tract composed of 68.922 acres and located in New Britain Township, Bucks County, was the subject of a mortgage agreement by Peace Valley Lakeside Community and Agricultural Trust Co., Inc. (Peace Valley),[1] in favor of First Pennsylvania Bank (the Bank) as security for a loan in the amount of $410,000.00. Peace Valley defaulted on its mortgage obligation and the Bank, after it had confessed judgment against Peace Valley in the amount of $675,523.28, issued a writ of execution, and purchased the premises for costs when sold by the sheriff on July 10, 1981. After the Bank had assessed damages in the amount of $697,843.17, it petitioned the Court of Common Pleas to establish the value of the property as of the sale date. Both the Bank and Peace Valley have appealed from the conclusion of the court that the fair market value was $385,000.00.

Both parties dispute the market value ascribed to the property by the court. The Bank contends that the court, as it determined the value, improperly considered the potential for a change in the zoning classification of the property, while Peace Valley asserts that the sum is unduly low by reason of the failure of the court to provide adequate consideration of and weight to expert evidence upon the "highest and best use" of the property.

1. The Deficiency Judgment Act provides that: "Any debtor, obligor, guarantor, mortgagor, and any other person directly or indirectly liable to the judgment creditor for the payment of the debt, and any owner of the property affected thereby, who is neither named in the petition nor served with a copy thereof or notice of the filing thereof as prescribed by general rule, shall be deemed to be discharged from all personal liability to the judgment creditor on the debt, interest and costs ...." 42 Pa.C.S. § 8103(b). Frank E. Elliott and Stephanie H. Elliott had executed a personal guarantee of payment of the subject loan. Upper Providence Town Center and Open Space Trust Company agreed to post certain of its real estate as additional security for the obligation. Therefore, the petition of the Bank to establish fair market value also identified Frank E. Elliott and Stephanie H. Elliott, as well as Upper Providence Town Center and Open Space Trust Company, Inc., as respondents. The term "Peace Valley" refers throughout to all respondents.

 The scope of appellate review of this issue is, of course, limited to a determination of whether there is sufficient evidence to sustain the holding of the hearing judge, or whether the court committed reversible error of law. *Union Nat. Bank of Pittsburgh v. Crump*, 349 Pa. 339, 340, 37 A.2d 733, 734 (1944); *Shrawder v. Quiggle*, 256 Pa.Super. 303, 311, 389 A.2d 1135, 1139 (1978). *Accord Cheltenham Federal Savings and Loan Assoc. v. Pocono Sky*, 305 Pa.Super. 471, 474, 451 A.2d 744, 746 (1982). Although the Deficiency Judgment Act does not define the term "fair market value", the appellate courts of this Commonwealth, when called upon to apply judicial scrutiny to fair market value from other perspectives, have defined the term as the price a purchaser, willing but not obligated to buy, would pay an owner, willing but not obligated to sell. *P. & R.C. & I. Co. v. North'd Co. Com'rs.*, 323 Pa. 185, 186 A. 105 (1936) (tax assessment); *Genztel Corp. v. Boro. of State College*, 13 Pa.Cmwlth.Ct. 116, 124, 318 A.2d 415, 419 (1974) (condemnation proceeding). This formula must, of course, be tempered by recognition that, in instances arising under the Deficiency Judgment Act, "the actual situation is that of a 'purchaser' obliged to buy in, in order to protect the loan it made, and an 'owner' obliged to sell his property at Sheriff's sale, because he is unable to pay his debt" and, therefore, the hearing court must consider "what reasonably the judgment creditor can get out of the property in partial or complete recapture of the loan and interest on loan ... ." *Cheltenham Federal Savings and Loan Assoc. v. Pocono Sky, supra* 305 Pa.Super. at 479–81, 451 A.2d at 748–49.

We first address the contention of the Bank that the hearing court erred when it considered the possibility of a change in zoning classification as an element of the fair market value of this property. While it is clear that evidence of increased value is inadmissible where the increase would result from a use proscribed by zoning regulations, the Pennsylvania Supreme Court established an exception

to this principle when, during its review of an appeal by the Commonwealth in a condemnation proceeding, it stated:

Where the enactment of the zoning restriction is not predicated upon the inherent evil of the proscribed use— in other words, where the forbidden use is *malum prohibitum* rather than *malum in se*—and there is a possibility or probability that the zoning restriction may in the near future be repealed or amended so as to permit the use in question, such likelihood may be considered if the prospect of such repeal or amendment is sufficiently likely as to have an appreciable influence upon present market value. It follows from the foregoing that such possible change in the zoning regulations must not be remote or speculative.

*Snyder v. Commonwealth*, 412 Pa. 15, 18, 192 A.2d 650, 652 (1963), *quoting* 4 Nichols on Eminent Domain Section 12.322 (Rev. 3rd. Ed.1962) (footnotes omitted). The *Snyder* court concluded that the existence of a probable or possible zoning change, sufficient to have an effect on the market value, is a question of fact and that it need not be proven by direct testimony but may be established through evidence as to trends in the community, the best use of the land, and a need for the proposed use as well as by an inspection of the premises by the factfinder. Nonetheless, the Bank contends that the evidence presented by Peace Valley was not sufficient under the *Snyder* standards to permit the court to consider the potential zoning change as a factor in establishing the fair market value of this property.

■ The evidence established that the parcel was situated in a district zoned Agricultural-Recreation, a classification which permitted residential units only on lots of five or more acres and further provided for a maximum of ten such residential units per development. The hearing judge determined that electricity and telephone service were available to the subject property and that, while an exception to the environmental ban on connection to the sewer service had not been received, sewer as well as water service were

technically and economically feasible. The expert appraiser presented by the bank testified that the fair market value of the parcel, if the permissible development of the parcel as a residential subdivision were undertaken, would be $207,000.00. Peace Valley presented a developer who proposed development of the parcel as a residential subdivision composed of 120 units, a proposal that, he testified, would be appropriate for the area and a plan that would be permitted in a district zoned (R–R) Residential. The expert appraiser for Peace Valley testified that the property was in the direct path of residential development in the township, that, even though adjacent properties were sparsely improved, there were housing developments in the area, and that there was a ready market for this type of development, a plan that he considered to be the best use of the tract. The appraiser proceeded to express the opinion that it was not likely that the municipality would reject an application for such a zoning change and the conclusion that, as a result, the fair market value of the property was $635,-000.00.

Our careful review of the entire record leads us to conclude that the hearing judge properly entered upon a consideration of the potential of a zoning amendment as a value factor and so carefully balanced this potential that we share the conclusion expressed in his able opinion "that under all of the circumstances the possibility of sewers and subsequent zoning change were not considerable on July 10, 1981, but were sufficient to have an influence, but a very small influence, on the property's fair market value." As a result, the appeal of the Bank must be rejected.

 We also reject the assertion of Peace Valley that the hearing judge concluded that the highest and best use of the parcel was development as a residential subdivision of five (5) acre lots. We do not agree that the court so concluded. Rather, the hearing judge merely noted that such a development was a permissible use under the zoning

ordinance then in effect. And while Peace Valley may have produced evidence that a development of 120 residential units would be the highest and best use of the property, the hearing judge was not bound to so find, much less be controlled by such a finding. While the notion of highest and best use has become an element for consideration in judicial determinations of fair market value in condemnation cases, *see Shillito v. Metropolitan Edison Co.*, 434 Pa. 172, 173, 252 A.2d 650, 651 (1969); *County of Luzerne v. Ceccoli*, 75 Pa.Cmwlth Ct. 486, 487–488, 462 A.2d 354, 355 (1983), it is but one of several elements that enter into such a determination. The decision of the Pennsylvania Supreme Court in *Union Nat. Bank of Pittsburgh v. Crump, supra*, remains the landmark authority in deficiency judgment proceedings and, as the hearing judge noted, the Court there made clear:

> Many elements properly enter into the determination of "fair market value". Among these are recent sales of real estate of comparable location and description .... Other factors of value include (1) the uses to which the property is adapted and might reasonably be applied (2) the demand for the property and similar properties, taking into consideration economic conditions which depress market value in its true sense and detrimentally influence such demand (3) the income produced by the property, including rents, and (4) generally, all elements which affect the actual value of the property and therefore influence its fair market value ....

*Id.*, 349 Pa. at 341, 37 A.2d at 735 (citations omitted). The findings of fact and discussion provided by the hearing judge in his able opinion demonstrate that he afforded careful consideration to all of the required elements. The record reveals ample evidence to support the conclusions upon which the trial judge based his determination that the fair market value of the subject premises was $385,000.00. As a result, we affirm.

Order affirmed.