J. S69021/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| PARKE BANK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| NORTH CHARLOTTE ROAD, LP AND | : | |
| GEORGE J. SPAEDER, BRUCE P. | : | |
| EARLE, RHOADS AVENUE NEWTOWN | : | |
| SQUARE, LP, ROSENDON HOLDING | : | |
| COMPANY LIMITED PARTNERSHIP, | : | |
| NORTH CHARLOTTE ROAD | : | |
| POTTSTOWN, GP, LLC, | : | |
| DOWNINGTOWN PIKE WEST CHESTER, | : | |
| LP, DOWNINGTOWN PIKE WEST | : | |
| CHESTER GP, LLC, EAST LINCOLN | : | |
| HIGHWAY, THORNDALE, LP, AND EAST | : | |
| LINCOLN HIGHWAY THORNDALE GP, | : | |
| LLC, | : | No. 1363 EDA 2015 |
| | : | |
| Appellants | : | |

Appeal from the Order Entered March 9, 2015,
in the Court of Common Pleas of Montgomery County
Civil Division at No. 2013-02279

| | | |
|---|---|---|
| PARKE BANK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| NORTH CHARLOTTE ROAD | : | |
| POTTSTOWN, LP AND GEORGE J. | : | |
| SPAEDER, BRUCE P. EARLE, RHOADS | : | |
| AVENUE NEWTOWN SQUARE, LP, | : | |
| ROSENDON HOLDING COMPANY | : | |
| LIMITED PARTNERSHIP, NORTH | : | |
| CHARLOTTE ROAD POTTSTOWN, GP, | : | |
| LLC, DOWNINGTOWN PIKE WEST | : | |
| CHESTER, LP, DOWNINGTOWN PIKE | : | |
| WEST CHESTER GP, LLC, EAST | : | |
| LINCOLN HIGHWAY, THORNDALE, LP, | : | |

J. S69021/15

AND EAST LINCOLN HIGHWAY              :
THORNDALE GP, LLC,                    :
                                      :
APPEAL OF:  NORTH CHARLOTTE           :
ROAD POTTSTOWN, LP AND GEORGE         :
J. SPAEDER, RHOADS AVENUE             :
NEWTOWN SQUARE, LP, NORTH             :
CHARLOTTE ROAD POTTSTOWN, GP,         :
LLC, DOWNINGTOWN PIKE WEST            :
CHESTER, LP, DOWNINGTOWN PIKE         :
WEST CHESTER GP, LLC, EAST            :
LINCOLN HIGHWAY, THORNDALE, LP,       :        No. 1666 EDA 2015
AND EAST LINCOLN HIGHWAY              :
THORNDALE GP, LLC,                    :
                                      :
             Appellants               :


Appeal from the Order Entered March 9, 2015,
in the Court of Common Pleas of Montgomery County
Civil Division at No. 2013-02279


BEFORE:  GANTMAN, P.J., FORD ELLIOTT, P.J.E., AND OLSON, J.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:            **FILED APRIL 15, 2016**

This is an appeal from the orders entered March 9, 2015, granting

Parke Bank's petition to fix fair market value and denying appellants' petition

to mark the judgment satisfied.  We affirm.

The trial court has aptly summarized the history of this case as

follows:

> The instant appeal arises from a Petition to Fix
> Fair Market Value of Real Property Sold and for
> Deficiency Judgment (the "Bank's Petition") filed by
> Parke Bank (the "Bank").  On February 1, 2013, the
> Bank filed a Praecipe to Transfer Judgment to this
> Court.  The judgment was in the amount of

- 2 -

$9,762,357.86, and was originally entered by the Court of Common Pleas of Delaware County, Pennsylvania. A judgment in that amount was thereafter entered against North Charlotte Road Pottstown, LP (the "Debtor") in this Court. The judgment against North Charlotte Road Pottstown, LP, arises from a loan taken out by North Charlotte in the amount of $8,000,000.00 which North Charlotte failed to repay as agreed. (N.T. 8/19/14, p. 27). The Bank held a mortgage on the property located at 1400 North Charlotte Street, Pottstown, Pennsylvania (the "Property")[Footnote 1] and thus secured the $8,000,000.00 loan.

> [Footnote 1] Situated on the Property is a shopping center constructed in 1971. (*See* N.T. 12/2/14, p. 32). This shopping center has its own parking lot in addition to a single building with approximately 85,000 square feet of space. The building has a long frontage and is very deep as well. (N.T. 8/19/14, p. 30).

On May 2, 2013, the Bank filed a Praecipe for Writ of Execution Upon a Confessed Judgment. On September 12, 2013, the Property was sold to the Bank at a Sheriff's Sale. On October 1, 2013, Parke Bank filed its petition to fix fair market value. On April 9, 2014, George J. Spaeder ("Spaeder"), a respondent named in the Petition, filed a Verified Petition to Mark Judgment Satisfied, to Strike the Petition of Parke Bank to Fix Fair Market Value and for Deficiency Judgment, and for Other Relief ("Spaeder's Petition").

This Court held a hearing on the Petition and Spaeder's Petition on August 19, 2014. This Court also heard testimony in the matter on December 2, 2014. On March 4, 2015, this Court entered two Orders. The first Order denied Spaeder's Petition. The second Order Fixing Fair Market Value -- Deficiency Judgment granted the Bank's Petition, fixing the fair market value of the Property at

$4,500,000.00.  The Order further established that the amount of the judgment owed to the plaintiff that was not discharged by the sale of the property was $5,369,725.37, plus continuing interest, attorney's fees and costs.

Subsequently, on March 18, 2015, Spaeder filed a Motion for Post-Trial [relief] seeking relief from this Court's Orders entered March 4, 2015.  On May 5, 2015, this Court held a hearing on the motion for post-trial relief and entered an Order denying the motion.

On April 8, 2015, Defendant North Charlotte Road Pottstown, LP and Respondents George J. Spaeder, Rhoads Avenue Newtown Square, LP, North Charlotte Road Pottstown, GP, LLC, Downingtown Pike West Chester, LP, Downingtown Pike West Chester GP, LLC, East Lincoln Highway Thorndale, LP, and East Lincoln Highway Thorndale GP, LLC ("Appellants") filed two Notices of Appeal indicating that Appellants were challenging this Court's two Orders dated March 4, 2015.  Appellants' appeals of those Orders are currently pending resolution under Superior Court Docket Number 1363 EDA 2015.  In addition, on May 12, 2015, Appellants appealed this Court's Order dated May 5, 2015 denying Spaeder's motion for post-trial relief.  This Opinion addresses the appeal from this Court's May 5, 2015 Order.

Trial court opinion, 6/22/15 at 1-3.[1]

---

[1] On July 21, 2015, this court issued a rule to show cause why the appeal should not be quashed as untimely, where the appeal was taken from the May 5, 2015 order denying appellants' motion for post-trial relief.  **See Parke Bank v. North Charlotte Road Pottstown, LP et al.**, No. 1666 EDA 2015, **per curiam** order (Pa.Super. filed 7/21/15) ("A motion for post-trial relief may not be filed to matters governed exclusively by the rules of petition practice.  Furthermore, a motion for post-trial relief may not be filed to orders disposing of proceedings that do not constitute a trial.") (citations omitted).  Because a deficiency judgment on the Bank's petition to fix fair market value was entered on the docket on March 9, 2015, it appeared that appellants' notice of appeal filed May 12, 2015 was untimely.

Appellants have raised the following issues for this court's review:

1.  Did the trial court err in fixing fair market value of the property in the amount of the Appellee bank's private sale of the property to its customer with bank financing, without exposing the property to the market, without any appraisal or other evidence to support its valuation, in an amount that was $1,300,000 less than the fair market value judicially admitted in the bank's Deficiency Judgment Petition?

2.  Did the lower court err in denying the Appellants' petition to mark the judgment satisfied when the Appellee bank collected $800,000 of an alleged deficiency on its judgment before getting a determination that there was any remaining deficiency?

3.  Did the lower court err in permitting the bank to apply that prematurely collected $800,000 to unrelated debt that was not cross-collateralized with the North Charlotte loan in order to collect the same $800,000 a second time from the Appellee North Charlotte Loan guarantors who did not guaranty cross-collateralized debt?

_____

***Id.*** In their response, appellants averred that they filed two notices of appeal on April 8, 2015, from the trial court's orders entered on March 4, 2015, granting the Bank's petition for a deficiency judgment and fixing fair market value, and denying appellants' petition to mark judgment satisfied. Appellants noted that the trial court had not ruled on their post-trial motion by the 30-day appeal deadline so they filed the April 8, 2015 appeals as a precaution against waiver. (Appellants' response to July 21, 2015 show cause order, 7/28/15 at 2.) The trial court ordered argument on the post-trial motion on May 5, 2015, and denied it that day. (***Id.***) Appellants then filed an appeal on May 12, 2015, from the trial court's May 5, 2015 order denying their post-trial motion. (***Id.***) As appellants' April 8, 2015 notices of appeal were timely filed within 30 days after the trial court's orders docketed March 9, 2015, we will consider the instant appeal to be timely.

Appellants' brief at 2-3.

The Deficiency Judgment Act ("DJA") provides, in relevant part, as follows:

> **(a)** **General rule.--**Whenever any real property is sold, directly or indirectly, to the judgment creditor in execution proceedings and the price for which such property has been sold is not sufficient to satisfy the amount of the judgment, interest and costs and the judgment creditor seeks to collect the balance due on said judgment, interest and costs, the judgment creditor shall petition the court to fix the fair market value of the real property sold.

42 Pa.C.S.A. § 8103(a).

"The initial duty and authority to determine fair market value under the petition of the kind present here lies with the fact-finder, the trial court. Our review is limited to deciding whether there is sufficient evidence to sustain the holding of the trial court, or whether there is a reversible error of law." **Loukas v. Mathias**, 931 A.2d 661, 662 (Pa.Super. 2007), citing **First Pennsylvania Bank, N.A. v. Peace Valley Lakeside Community and Agricultural Trust, Inc.**, 478 A.2d 42 (Pa.Super. 1984); **Cheltenham Federal Savings and Loan Association v. Pocono Sky Enterprises, Inc.**, 451 A.2d 744 (Pa.Super. 1982); **Shrawder v. Quiggle**, 389 A.2d 1135 (Pa.Super. 1978).

> The Deficiency Judgment Act applies when real property is sold to the judgment creditor at a sheriff's sale. **First National Consumer Discount Company v. Fetherman**, 515 Pa. 85, 527 A.2d 100

(1987). If the sale proceeds are insufficient to satisfy the amount of the judgment debt, the Act requires the judgment-creditor to file a petition to fix the fair market value within six months after the deed is delivered in order to proceed against the debtor for the remainder of the debt. *Id.* at 91-93, 527 A.2d at 103.

***Fidelity Federal Sav. and Loan Ass'n v. Capponi***, 684 A.2d 580, 585

(Pa.Super. 1996), ***appeal denied***, 698 A.2d 67 (Pa. 1997).

The Deficiency Judgment Act was enacted in the 1940s in order to protect debtors after their property was foreclosed. The act was aimed at shielding the mortgagor-debtor from the mortgagee who would purchase the mortgaged property for less than fair market value, usually for cost, and then reduce the debt only by the purchase price. [***PNC Bank, National Association v. Balsamo***, 634 A.2d 645 (Pa.Super. 1993), ***appeal denied***, 648 A.2d 790 (Pa. 1994)].

Prior to the Deficiency Judgment Act, the judgment creditor often recovered the property *and* the full amount of the debt. The Deficiency Judgment Act prevented this by requiring the judgment creditor to reduce the debt by the fair market value of the property. This court in [***Commonwealth Bank & Trust Co., N.A. v. Hemsley***, 577 A.2d 627 (Pa.Super. 1990), ***appeal denied***, 583 A.2d 793 (Pa. 1990)] noted that the purpose of the Deficiency Judgment Act was

to relieve a debtor of further personal liability to the creditor, if the real property taken by the creditor on an execution has a "fair market value", as of the date of the execution sale, sufficient so that the creditor may dispose of the property to others (or even, sometimes, use it himself) without a net loss to the creditor.

> ***Hemsley***, ***supra***[], 577 A.2d at 629 (quoting
> ***Cheltenham Federal Savings and Loan
> Associations v. Pocono Sky Enterprises, Inc.***,
> 305 Pa.Super. 471, 479, 451 A.2d 744, 748 (1982)).

***Id.*** at 586 (emphasis in original).

> The fair market value of land refers to the price a
> purchaser, who is willing but not obligated to buy,
> would pay an owner, who is willing but not obligated
> to sell.  ***First Pa. Bank, N.A. v. Peace Valley
> Lakeside***, 329 Pa.Super. 218, 478 A.2d 42 (1984).
> A professional appraisal is not required in order to
> determine fair market value, and although evidence
> of fair market value may be obtained through expert
> testimony, such testimony is not the exclusive
> method of establishing value.  ***National Council of
> Junior Order of United American Mechanics v.
> Zytnick***, 221 Pa.Super. 391, 293 A.2d 112 (1972).
> The trier of fact weighs the credibility of an expert
> witness' testimony regarding valuation.  ***Mellon
> Bank v. Restaurant of A.B.E.***, 364 Pa.Super. 567,
> 528 A.2d 654 (1987).  An appellate court must
> accept the credibility determinations of the trial court
> with respect to the credibility of witnesses.  ***Id.***

***Bryn Mawr Trust Co. v. Healy***, 667 A.2d 719, 723 (Pa.Super. 1995),

***appeal denied***, 681 A.2d 1340 (Pa. 1996).

> The [DJA] requires the court to determine the 'fair
> market value' of the premises, without defining such
> value.  This phrase has, however, been interpreted
> by this Court to mean the price which the property
> would bring at a fair sale between parties dealing on
> equal terms.

***Union Nat. Bank of Pittsburgh v. Crump***, 37 A.2d 733, 735 (Pa. 1944)

(citation omitted).

> Many elements properly enter into the determination
> of 'fair market value'.  Among these are recent sales
> of real estate of comparable location and

> description[]. No evidence of such sales was offered in this case. Other factors of value include (1) the uses to which the property is adapted and might reasonably be applied[]; (2) the demand for the property and similar properties, taking into consideration economic conditions which depress market value in its true sense and detrimentally influence such demand[]; (3) the income produced by the property, including rents, and (4) generally, all elements which affect the actual value of property and therefore influence its fair market value[].

*Id.* (citations omitted).

Appellants complain that the trial court should have used the "as-stabilized" value of $13,500,000 provided by its expert, John Paul Williams ("Williams"). An as-stabilized valuation assumes that the property is 95% occupied with the tenants paying rent at a market rate. (Appellants' brief at 40.) According to Williams, the fair market value of the property was $10,800,000 as of the date of the 2013 sheriff's sale ($13,500,000 minus stabilization construction costs). Appellants complain that the trial court used an "as is" valuation that failed to account for the presently-unoccupied portion of the property.

The trial court, sitting as finder-of-fact, specifically found Williams' testimony to be not credible and based on hypothetical assumptions. (Trial court opinion, 6/22/15 at 6.) "These assumptions included a ninety-five percent tenant occupancy rate, income from the lease of a pad site on the Property, and the completion of numerous renovations." (*Id.* (citations to the transcript omitted).) Instead, the trial court accepted the testimony of

the Bank's experts, Anthony Salvitti ("Salvitti") and Ralph Gallo ("Gallo"), in determining that the fair market value of the property was equal to the sales price, *i.e.*, $4,500,000. (*Id.* at 5 n.3.) We find no abuse of discretion in this regard. *See Crump*, 37 A.2d at 735 (trial court is not bound to adopt the opinion of any one expert, or group of experts, but may determine the fair market value on the whole record).

The trial court noted that the property is occupied by a single tenant, Planet Fitness, and is 81% vacant. (Trial court opinion, 6/22/15 at 4.) Appellants argue that the Bank did not expose the property to the market. This argument is refuted by the testimony of Gallo, which was credited by the trial court, that the Bank posted a sign advertising the sale of the property and received several inquiries as a result. (*Id.* at 5.) The Bank contacted its customers that it knew were engaged in the commercial real estate business, eventually discussing the sale of the property with approximately fifty individuals, including real estate developers and brokers. (*Id.*) The Bank attempted to lease additional portions of the property but was unable to do so. (*Id.*)

Appellants make much of the fact that the Bank eventually sold the property to one of its own customers, Lenard Thylan ("Thylan"). Appellants imply that the Bank sold the property for less than it was worth because Thylan was an important long-term customer. Again, the record belies this argument. Gallo testified that this was an arms-length transaction and the

Bank and Thylan engaged in extensive negotiations. (*Id.*) This was not a distressed sale, and each party had the opportunity to walk away. (*Id.*) The Bank initially proposed a sale price of $5,000,000, but after negotiations, agreed to sell the property to Thylan for $4,500,000. (*Id.*) There is no indication that the Bank sold the property at a below-market price to Thylan. To the contrary, the record reflects that the property is in poor condition, requires hundreds of thousands of dollars in deferred maintenance, and has only one tenant. The record fully supports the trial court's determination that the purchase price received by the Bank represents the fair market value of the property.[2]

Finally, in their last two issues on appeal, appellants contend that the Bank violated the DJA when it failed to apply $800,000 in proceeds from the sale of property located at 3607 West Chester Pike, Newtown, Pennsylvania, against the North Charlotte deficiency judgment. However, as explained by

---

[2] Appellants argue that the Bank was bound by the contention in its petition that the fair market value of the property was $5,800,000. (Appellants' brief at 43.) Appellants characterize this as a judicial admission. (*Id.* at 43-44.) However, the $5,800,000 valuation was based on a 2011 appraisal when the property had three tenants. As the trial court states, the DJA requires the court to hear evidence regarding the fair market value of a property prior to fixing that value if the value proffered by a petitioner is challenged by a respondent. (Trial court opinion, 6/22/15 at 4 n.2.) *See* 42 Pa.C.S.A. § 8103(c)(4) ("If an answer is filed and testimony produced setting forth that the fair market value of the property is more than the value stated in the petition, the court shall hear evidence of and determine and fix the fair market value of the property sold."). Appellants have cited no authority for the proposition that the trial court was bound by the value proposed in the Bank's petition.

the trial court, this property was not sold to the Bank and the sale did not occur in the context of an execution proceeding. (Trial court opinion, 6/22/15 at 7.) It was sold to a third party, and the proceeds were applied to an entirely separate debt. (***Id.*** at 7-8.) Therefore, the Bank did not violate the DJA. ***See*** 42 Pa.C.S.A. § 8103(a) ("Whenever any real property is sold, directly or indirectly, to the judgment creditor in execution proceedings . . . .").

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/15/2016

- 12 -